UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOSHUA ALLEN WARD,<br><br>           Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>           Respondent. | Case No. 1:16-CV-00282-EJL<br>          1:11-CR-00142-EJL-1<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

Pending before the Court in the above entitled matter is Petitioner Joshua Allen Ward's Motion to Vacate or Set Aside Sentence under 28 U.S.C. § 2255. (CIV Dkt. 1, CR Dkt. 85.)  This matter is fully briefed by the parties and ripe for decision.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument. For the reasons set forth below, the Court denies the Motion.

## PROCEDURAL BACKGROUND

Mr. Ward was originally indicted for unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (CR Dkt. 1). He was later convicted after a bench trial based on stipulated facts. (CR Dkt. 53, 54, 55.)

Ordinarily, a violation of 18 U.S.C. § 922(g) carries a maximum sentence of ten years. However, the Armed Career Criminal Act ("ACCA") mandates a 15-year minimum sentence for defendants who have three or more prior convictions for a serious drug offense or a violent felony. 18 U.S.C. § 924(e).

During sentencing, Defendant objected to application of the ACCA as well as the Court's guideline computation. (CR Dkts. 61, 62, 74.) The Government argued for application of the ACCA and in support of that argument offered into evidence the judgments and charging documents relevant to the prior convictions. (CR Dkt. 64, 74.)

Ultimately, the Court Adopted the Presentence Investigation Report and found that Defendant had four previous violent felonies. With application of the ACCA, the guideline range applicable to Mr. Ward's offense in light of his criminal history was 188 to 235 months in prison; two to five years supervised release; a fine of $15,000 to $150,000, and a $100 special assessment. (CR Dkt. 74.) [1] Nevertheless, the Court sentenced Defendant below the guidelines to the statutory minimum of 180 months in prison with an additional five years supervised release and 120 hours of community service in lieu of a fine. (CR Dkt. 74.) That sentence was subsequently amended to 157.5 months to account for time served. (CR Dkt. 63, 68.)

---

[1] At sentencing, Defendant argued that, without application of the ACCA, the guideline range applicable to the offense would be 84 to 105 months. (CR Dkt. 74.)

On June 24, 2016, Mr. Ward filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence on the basis that it was imposed in violation of the Constitution. (CR Dkt. 85, CIV Dkt. 1.) More specifically, Mr. Ward argues that his sentence must be vacated, because it was based on a finding that Mr. Ward was an armed career criminal under the residual clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), and that clause was deemed unconstitutional by the United States Supreme Court in *Johnson v. United States*, 135 S.Ct. 2251 (2015) (*"Johnson II"*). *Id.* Mr. Ward argues that he does not qualify as a career criminal under the ACCA if it is applied retroactively and in a constitutional manner (i.e., without the residual clause). *Id.*

On July 13, 2016, the Court ordered briefing on the Defendant's Petition. (CIV Dkt. 2.) The Government filed an Answer arguing the Defendant's sentence is constitutional, because Defendant has three previous convictions that constitute violent felonies pursuant to the elements clause of the ACCA. (CIV Dkt. 7.) Defendant filed a Reply. (CIV Dkt. 8). The Court has carefully reviewed this briefing and now takes up the Motion.

## STANDARD OF REVIEW

This matter comes before the Court on Defendant/ Petitioner's motion to vacate his sentence because it was based on application of a statutory provision that, after his sentencing, was declared unconstitutional. A prisoner serving a sentence imposed by a federal court "may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). The permissible grounds for a motion brought pursuant to 28 U.S.C. § 2255 are "that the sentence was imposed in violation of the

Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under 28 U.S.C. § 2255 should only be granted where the claimed error is "a fundamental defect which inherently results in a complete miscarriage of justice" and presents "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Davis v. U.S.*, 417 U.S. 333, 346 (1974) (quoting *Hill v. U.S.*, 368 U.S. 424, 428 (1962)).

## DISCUSSION

Mr. Ward was sentenced after being found guilty of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Under the ACCA, a person who violates 18 U.S.C. § 922(g) and "has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another" is subject to a mandatory minimum sentence of 15 years. 18 U.S.C. § 924(e)(1).

At sentencing the Court found Mr. Ward had four previous convictions each of which constituted a "violent felony." The ACCA defines "violent felony" as follows:

> [T]he term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
>
> > **(i)** has as an element the use, attempted use, or threatened use of physical force against the person of another [the elements clause]; or

> **(ii)** is burglary, arson, or extortion, involves use of explosives [the enumerated offenses clause], or otherwise involves conduct that presents a serious potential risk of physical injury to another [the residual clause][.]

18 U.S.C. § 924(e)(2)(B). Courts divide this definition into three categories: (1) the elements clause; (2) the enumerated offenses clause; and (3) the residual clause.

In 2015, the United States Supreme Court held that the residual clause was unconstitutional under the void-for-vagueness doctrine. *Johnson II*, 135 S.Ct. at 2560. The void-for-vagueness doctrine prohibits the government from imposing sanctions "under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes or so standardless that it invites arbitrary enforcement." *Id.* at 2556.

In 2016, the United States Supreme Court determined that the *Johnson II* decision should have a retroactive effect. *Welch v. U.S.*, 136 S.Ct. 1257, 1265. Thus, defendants sentenced pursuant to the residual clause can collaterally attack their sentences as unconstitutional under Section 2255. *Id.*

Because the residual clause has been deemed unconstitutional, only those offenses that meet the elements clause or enumerated offenses clause can satisfy Section 924(e). In this case, the parties agree that the enumerated offenses clause does not apply. Instead, the Court must determine whether Mr. Ward's prior convictions meet the elements clause. In other words, the Court must determine whether Mr. Marsh's previous convictions

necessarily required "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

"The meaning of 'physical force' is a question of federal law." *Johnson v. U.S.*, 130 S. Ct. 1265, 1269 (2010) (*Johnson I*). Under federal law, "'physical force' means *violent* force- that is, force capable of causing physical pain or injury to another person." *Id.* at 1271.

To determine whether a prior conviction constitutes a crime of violence, courts generally apply the "formal categorical approach" established in *Taylor v. U.S.*, 110 S. Ct. 2143 (1990). Under the categorical approach, "sentencing courts compare the elements of the statute of conviction with a federal definition of the crime to determine whether conduct proscribed by the statute is broader than the generic federal definition." *United States v. Caceres-Olla,* 738 F.3d 1051, 1054 (9th Cir. 2013) (internal quotation marks omitted). "If the statute of conviction 'sweeps more broadly than the generic crime, a conviction under that law cannot count as [a qualifying] predicate, even if the defendant actually committed the offense in its generic form." *Id.* (quoting *Descamps v. U.S.*, 113 S.Ct. 2276, 2283 (2013)). The sentencing courts are generally precluded from considering information other than the fact of the conviction, respective elements of the crime of conviction, and the generic federal crime. *Descamps*, 133 S. Ct. at 2283.

When, however, the statute of conviction "lists multiple, alternative elements, and so effectively creates several different . . . crimes" the statute is deemed "divisible." *Id.* If the statute is divisible, the Court will apply a "modified categorical approach" and "look

beyond the statutory elements to the charging paper and jury instructions to determine whether the defendant's conviction necessarily involved facts corresponding to the generic federal offense." *Caceres-Olla,* 738 F.3d at 1054, n. 2. Then the Court can "do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." *Descamps*, 133 S.Ct. at 2281.

The Government concedes that two of Mr. Ward's previous convictions for burglary in violation of Minnesota Statute § 609.582.2A do not constitute violent felonies. However, the Government argues that three other previous convictions are violent felonies pursuant to the elements clause of the ACCA: (1) a 2002 conviction for aid and abet robbery in violation of Minnesota Statutes §§ 609.24, 609.05.1; (2) a 2002 conviction for assault in the second degree- dangerous weapon in violation of Minnesota Statute § 609.222.1; and (3) a 2007 conviction for aggravated assault with use of a firearm or deadly weapon in violation of Idaho Code §§ 18-1901(b), 905(a) and 19-2520.

1.    **Mr. Ward's Aid and Abet Robbery Conviction from Minnesota is a Violent Felony.**

In 2002 Mr. Ward was convicted of aid and abet robbery in violation of Minnesota Statutes §§ 609.24, 609.05.1.[1] As described below, this conviction constitutes a crime of violence within the meaning of the ACCA.

---

[1] Minnesota Statute Section 609.05.01 describes aid and abet liability: "A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime."

Minnesota Statute Section 609.24 defines "[s]imple robbery" as follows:

> Whoever having knowledge of not being entitled thereto, takes personal property from the person or in the presence of another and **<u>uses or threatens the imminent use of force</u>** against any person to overcome the person's resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery and may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $20,000, or both.

Minn. Stat. § 609.24 (emphasis added). Thus, the use or threatened use of force is an element of the crime. *Id.* Further, to be convicted of "simple robbery," the use or threat of force must be sufficient to "overcome the person's resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property." *Id.*

Minnesota case law makes clear that the degree of force required to establish simple robbery is violent, physical force, or the threat thereof. More specifically, under Minnesota law, fifth-degree assault is a lesser-included offense of simple robbery. *State v. Stanifer*, 382 N.W.2d 213, 218-19 (Minn. Ct. App. 1986). "[P]roof of the 'use or threatened imminent use of force against a person' in a prosecution for simple robbery necessarily proves a fifth-degree assault, as that crime is statutorily defined." *Id.* at 220.

Fifth degree assault requires that the perpetrator either: "(1) commits an act with intent to cause fear in another of immediate bodily harm or death; or (2) intentionally inflicts or attempts to inflict bodily harm upon another." Minn. Stat. § 609.224.1. "Bodily harm" is further defined by statute as "physical pain or injury, illness, or any impairment of physical condition." Minn. Stat. § 609.02.7.

Thus, in Minnesota, "simply robbery" necessarily includes as an element of the offense the intentional use, attempted use, or threatened use of physical force capable of causing physical pain or injury to another person and sufficient to "overcome the person's resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property." Accordingly, the Minnesota criminal offense of "simple robbery" is a violent felony within the meaning of the ACCA.

Defendant argues that the Minnesota conviction for simple robbery does not rise to the level of a violent felony for two primary reasons: (1) Minnesota robbery can be committed with a degree of force that does not constitute *violent* physical force and (2) the crime does not require the *intentional* use of force. (Dkt. 1, p. 16.) These arguments are addressed in turn below.

A.     **The Degree of Force Required under Minnesota's Simple Robbery Statute is Violent Physical Force.**

Defendant argues that the Minnesota simple robbery statute requires nothing more than *de minimus* force and, therefore, does not qualify as a crime of violence as a matter of law. In support of this argument, Defendant primarily relies on four Minnesota cases: *State v. O'Neil*, 73 N.W. 1091 (Minn. 1898); *Duluth St. Ry Co. v. Fidelity & Deposit Co. of Maryland*, 161 N.W. 595, 596 (Minn. 1917); *State v. Slaughter*, 691 N.W.2d 70, 76 (Minn. 2005); and *State v. Burrell*, 506 N.W.2d 34 (Minn. Ct. App. 1993). The Court has considered this case law and is not persuaded by Defendant's arguments.

First, the *O'Neil* decision was issued in 1898 under a different statute. At that time, simple robbery could be accomplished by either force or violence:

> the unlawful taking of personal property, from the person or in the presence of another, against his will, **by means of force, or violence or fear of injury**, immediate or future, to his person or property, or the person or property of a relative or member of his family, or of any one in his company at the time of the robbery.

73 N.W. at 1091 (citing Minn. Stat. § 6478 (1894)) (emphasis added). Further, at that time, pursuant to statute, the degree of force employed was immaterial provided force was used in order to "obtain or retain possession of the property, or to prevent or overcome resistance to the taking." *Id.* (citing Minn. Stat. §§ 6479, 6480 (1894)).

In contrast, the current statute does not distinguish between force or violence. Instead, it conflates the two by incorporating the elements of fifth degree assault in the definition of force. This definition requires the use or threatened use of violent force in terms of bodily harm.

Second, the *Duluth Street Railway* case does indeed hold that the degree of force used to accomplish robbery was immaterial so long as force was used to relieve another of his possessions. *Duluth St. Ry. Co. v. Fidelity & Deposit Co. of Maryland*, 161 N.W. at 596 (holding pushing or grabbing a person during theft may constitute simple robbery). However, the 1917 case is distinguishable, because: (1) it is a civil case, (2) the term "robbery" was defined in terms of an insurance policy, and (3) the criminal statutes consulted in defining the term are no longer in effect. *Id.* at 301-02 (citing Minn. Stat. § 8635 (1913)). By its own terms, the decision limits its scope and application: "[f]or

purposes of this case the trial court's definition of robbery was right." *Id.* at 301. Moreover, the decision is based on rules of construction applicable to insurance contracts that require the Court to define the term "robbery" as broadly as possible and in favor of coverage. *Id.* at 303 ("Yet defendant prepared this policy. Words of doubtful meaning must be constructed strongly against it.") Accordingly, the Court gives the *Duluth Street Railway* case little probative value, especially in light of the *Stanifer* decision from 1986 applying the current criminal statute in effect.

Third, the *Slaughter* case holds that grabbing a necklace from someone's neck in such a way as to create scratches that felt like "skin burn" according to the victim is sufficient to constitute "bodily harm" and thus, the use of force necessary to support a simple robbery conviction. *State v. Slaughter*, 691 N.W. 2d at 72, 76. In so finding, the Minnesota Supreme Court also noted that "pushing or grabbing a person during [a] . . . theft may constitute simple robbery." *Id.* at 76 (citing *State v. Nash*, 339 N.W.2d 554, 557 (Minn. 1983)).

Without a doubt, the *Slaughter* and *Nash* decisions, cause the Court to pause. These Minnesota cases involve the least amount of force necessary to support a simple robbery conviction in Minnesota. The issue is whether such force constitutes violent physical force within the meaning of the ACCA. *See Johnson I.* The Court has to find that it does.

Consistent with *Johnson I*, tearing a necklace from someone's neck and leaving a mark and/or pushing or grabbing a person during a theft constitutes force "capable of causing physical pain or injury to another person." *Id.* at 1271. Moreover, such force is sufficient "to inflict pain" such as "a slap in the face, for example." *Id.* at 1272. Further,

under the plain language of the Minnesota robbery statute that the Defendant was convicted of violating, the degree of force used or threatened to commit the crime must be sufficient to overcome the victim's control over the property. Accordingly, the Court finds that even the minimum degree of force required to sustain a simple robbery conviction in Minnesota is sufficient to meet the federal definition of violent physical force.

Fourth, Defendant argues that the *Burrell* decision is incompatible with the *Stanifer* decision. (CIV Dkt. 8, p. 5). According to Defendant, the infliction of "bodily harm" is not an element of simple robbery but is an aggravating element that transforms simple robbery into aggravated robbery. *Id.*

In *Burrell*, the defendant argued that his conviction should be reduced from aggravated robbery to simple robbery because the statutes impermissibly overlapped and either could control the case. *Burrell*, 506 N.W.2d at 36. The Minnesota Court of Appeals held that force alone is all that is required for simple robbery while aggravated robbery requires bodily harm:

> A reading of both statutes shows that the infliction of bodily harm is a required element for aggravated robbery. In order to establish bodily harm, there must be some evidence that the victim was subjected to pain or injury. *See State v. Johnson,* 277 Minn. 230, 237, 152 N.W.2d 768, 773 (1967), *cert. denied,* 390 U.S. 990 (1968); Minn.Stat. § 609.02, subd. 7 (1990) (bodily harm is "physical pain or injury, illness, or any impairment of physical condition"). Mere force suffices for the simple robbery statute. Since the statutes for simple robbery and aggravated robbery are clear and describe different behavior, they do not impermissibly overlap.

*Id.* at 37. In support of this argument, Defendant also cites to *State v. Kvale*, 302 N.W.2d 650 (Minn. 1981) (robbery involving infliction of bodily harm is *aggravated* robbery).

Again, the Court disagrees. The cases are not incompatible and *Stanifer* has been applied consistently by Minnesota courts and was recently reaffirmed by the Minnesota Court of Appeals in *State v. Salim*, 2017 WL 562499 (Minn. Ct. App. Feb. 13, 2017) ("S]ince *Stanifer* was decided in 1986, it has not been called into question by any subsequent decision of this court or the supreme court").

It is beyond dispute that a simple robbery conviction in Minnesota requires the use of force. The Court finds that the degree of force required to sustain such a conviction is consistent with the federal definition of violent force. The degree of bodily harm actually inflicted might elevate the crime to aggravated robbery but simple robbery is a crime of violence within the meaning of the ACCA.

In support of this conclusion the Court notes that robbery without the use of any force is a theft. Simple robbery in Minnesota requires more than a theft; it requires an assaultive act.[2] *See Stanifer*, 385 N.W.2d at 220 (holding simple robbery is "basically a theft accomplished by means of an assaultive act"). A theft becomes a robbery if the perpetrator employs force to a degree necessary to relieve the victim of the property in an assaultive act.

---

[2] "Theft occurs when a person 'intentionally and without claim of right takes, uses, transfers, conceals or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of the property.'" *State v. McClenton*, 781 N.W.2d 181, 187 (Minn. Ct. App. 2010) (citing Minn. Stat. § 609.52, subd. 2(1) (2006)).

Finally, this Court recognizes that the Minnesota federal district court has issued two decisions on either side of this legal issue. *See United States v. Taylor*, 2017 WL 506253, at * 5-7 (D. Minn. Feb. 7, 2017) (holding simple robbery is a predicate felony under the ACCA); *cf United States v. Pettis*, 2016 WL 5107035, at *3 (D. Minn. Sept. 19, 2016) (holding simple robbery is not a predicate felony under the ACCA). The Court has examined these decisions and finds the *Taylor* line of cases more compelling and better-reasoned in light of *Stanifer* as well as the Eight Circuit's decisions in *United States v. Raymond*, 778 F.3d 716, 717 (8th Cir. 2015); *United States v. Johnson*, 526 Fed.Appx. 708, 711 (8th Cir. 2013) (unpublished); *United States v. Fogg*, 836 F.3d 951, 956 (8th Cir. 2016); and *United States v. Armstrong*, 554 F.3d 1159, 1166 (8th Cir. 2009) (same). *See also United States v. Maxwell*, 823 F.3d 1057, 1061 (7th Cir. 2016) (holding simple robbery is crime of violence within meaning of United States Sentencing Guidelines).

As described in the *Taylor* decision, Minnesota courts have consistently required force capable of causing physical pain or injury in order to commit simple robbery:

> Cases finding that the use or threatened use of force was insufficient illuminate the lower boundary of force required. The Minnesota Supreme Court has held the following conduct insufficient: mere purse snatching, unaccompanied by pushing or shoving; closing in on a woman waiting at a bus stop and reaching into her purse to grab money; and making vague threats in the context of a drug transaction. *See State v. Slaughter*, 691 N.W.2d 70, 76 (Minn. 2005); *State v. Nash*, 339 N.W.2d 554, 555 (Minn. 1983); *State v. Moore*, 295 N.W.2d 101, 102 (Minn. 1980).

*Taylor*, 2017 WL 2017 WL 506253, at *5. Further, "[n]o Minnesota court has held that merely bumping, nudging, or 'impacting,' someone (or threatening to do so) is sufficient

to overcome that person's resistance." Minnesota simple robbery requires that the perpetrator *intend* his force to not only overcome resistance, but also have that *effect.*" *Id.*

In short, the Court concludes that the degree of force required for a simple robbery conviction in Minnesota is sufficient to constitute violent physical force within the meaning of federal law.

### B.     *The Intentional Use of Force under Minnesota's Simple Robbery Statute.*

Defendant also argues that his Minnesota conviction for simple robbery does not rise to the level of a violent felony under the ACCA because the crime does not require the *intentional* use of force. (CIV Dkt. 1, p. 16.) Defendant argues that violent physical force within the meaning of the ACCA requires the active employment of force in an intentional manner, not simply reckless or negligent conduct that results in physical harm and the Minnesota simple robbery conviction could be based on mere negligence or recklessness. For the reasons set forth below, the Court does not agree.

Defendant relies upon a series of decisions beginning with *Leocal v. Ashcroft* to argue that a crime of violence, as that term is used in federal law including the ACCA, requires a specific intent or *mens rea* requirement. 543 U.S. 1 (2004). In *Leocal*, the United States Supreme Court determined that drunk driving is not a crime of violence under 18 U.S.C. § 16, even if it is a felony under state law and results in severe bodily harm, because the crime requires only a showing of negligence and not the intent to do violent physical harm.

The statute at issue in the *Leocal* decision defines crime of violence consistent with how it is defined in the elements clause of the ACCA. See 18 U.S.C. § 16; 18 U.S.C.

§924(e)(2)(B)(i). To qualify as a crime of violence, an offense must have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* Examining this language, the United States Supreme Court held "[t]he key phrase in § 16(a)- the 'use ... of physical force against the person or property of another'- most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Leocal*, 543 U.S. at 9.

Building on that reasoning, the Ninth Circuit has determined a crime that requires only reckless or grossly negligent use of force does not qualify as a crime of violence. *Fernando-Ruiz v. Gonzales*, 466 F.3d 1121, 1132 (9th Cir. 2006) (holding reckless misconduct insufficient to qualify as crime of violence). "The bedrock principle of *Leocal* is that to constitute a federal crime of violence an offense must involve the *intentional* use of force against the person or property of another." *Id.* (emphasis added).

Defendant argues that simple robbery in Minnesota does not require specific intent in all instances, because simple robbery requires an assault and some assaults can be effectuated via negligent or reckless conduct. (CIV Dkt. 1, pp. 16-18). In support of this argument, Defendant relies on the Minnesota Supreme Court's decision in *State v. Fleck*, 810 N.W.2d 303 (Minn. 2012).

The *Fleck* decision divides the Minnesota assault definition into two parts: "assault-fear" and "assault-harm." *Id.* at 305. "[A]n act done with intent to cause fear in another of immediate bodily harm or death" is referred to as "assault fear." *Id.* "[T]he intentional infliction of or attempt to inflict bodily harm upon another" is referred to as "assault harm." *Id.*

"Assault-fear" is a specific intent crime. *Id.* at 309-310. "the definition of assault fear requires the State to prove the defendant committed an act with an additional special mental element- specifically: 'an act done *with intent to* cause fear in another of immediate bodily harm or death.'" *Id.* at 309 (citing Minn. Stat. § 609.02, subd.10(1)). In contrast, "assault-harm" is a general intent crime. *Id.* at 309-310. The Minnesota Supreme Court explains this distinction as follows:

> The Legislature defined assault-harm as 'the intentional infliction of . . . bodily harm upon another.' Minn. Stat. § 609.02,subd.10(2). The forbidden act is a physical act, which results in bodily harm to another. Although the definition of assault-harm requires the State to prove the defendant intended to do the physical act, nothing in the definition requires proof that the defendant meant to violate the law or cause a particular result.

*Id.* at 309. To be convicted of assault-harm requires only proof that "the defendant intended to do the physical act forbidden." *Id.* at 310.

Defendant argues that his simple robbery conviction requires a theft plus an assault. Because the assault can be accomplished through less than intentional conduct, simple robbery does not qualify as a crime of violence under the ACCA.

The central problem with Defendant's argument is that he was not convicted of assault alone. He was convicted of simple robbery and to be convicted of robbery, the defendant must appreciate "that he is not entitled to the property which he takes." *See State v. Sandve*, 156 N.W.2d 230, 231 (1968) ("one of the elements of the crime is knowledge by the accused that he is not entitled to the property which he takes"). The whole point of

the crime is to overtake the victim's control or possession of the property at issue with knowledge that the property does not belong to the perpetrator.

In sum, the Court finds that Mr. Ward's conviction for simple robbery in Minnesota, as a matter of law, required proof of the intentional use of violent physical force. Therefore, the simple robbery conviction is a violent felony within the meaning of the ACCA.

**2.      Mr. Ward's Assault in the Second Degree-Dangerous Weapon Conviction from Minnesota is a Violent Felony.**

In 2002 Mr. Ward was convicted of assault in the second degree- dangerous weapon in violation of Minnesota Statute § 609.222.1. As described below, this conviction constitutes a second crime of violence within the meaning of the ACCA.

Minnesota Statute Section 209.222 is divided into two subdivisions. Mr. Ward was convicted under subdivision one, which states, "Whoever assaults another with a dangerous weapon may be sentenced to imprisonment for not more than seven years or to payment of a fine of not more than $14,000, or both." Minn. Stat. § 209.222.1.[3]

Assault, as explained *supra*, requires the intentional use of force or the threatened use of force. Minn. Stat. § 609.02, subd.10(1). "Dangerous weapon" is further defined as:

> [1] any firearm, whether loaded or unloaded, or any device designed as a weapon and **capable of producing death or great bodily harm**, [2] any combustible or flammable liquid or other device or instrumentality that, in the manner it is used or intended to be used, **is calculated or likely to produce death or great bodily harm**, or [3] any fire that is **used to produce death or great bodily harm**.

---

[3] Subdivision two requires both an assault and "substantial bodily harm" and leads to greater penalties. Minn. Stat. § 209.222.2.

Minn. Stat. § 609.02.06 (emphasis added).

A plain reading of the Minnesota statute makes clear that second degree assault with a dangerous weapon is a violent felony within the meaning of the ACCA. This crime requires the use, attempted use, or threatened use of violent physical force against the person of another. The Eighth Circuit and Minnesota federal district court uniformly agree with this analysis of the statute. *See United States v. Lindsay*, 827 F.3d 733, 740 (8th Cir. 2016) (holding second-degree assault under Minn. Stat. § 609.222 qualifies as a violent felony for ACCA purposes); *United States v. Vargas*, 2017 WL 1379325, at * 2 (D. Minn. Apr. 14, 2017) (accord); *United States v. Peters*, 2016 WL 4926418, at * 3 (D. Minn. Sept. 15, 2016) (accord); *United States v. Reese*, 2016 WL 5477074 (D. Minn. Sept. 27, 2016).

Nevertheless, Defendant argues that the Minnesota conviction for second degree assault with a dangerous weapon does not rise to the level of a violent felony because the crime does not require the intentional use or threat of force. (Dkt. 1, pp. 18-19.) Again, based on the Minnesota Supreme Court's decision in *Fleck*, Defendant argues that Minnesota second degree assault conviction requires only general intent to do the physical act that leads to the harm but not the intent to cause harm and, thus, is categorically overbroad because the conviction could be based on negligent or reckless conduct. *Id.*

The problem with that logic, again, is that this is not a simple assault conviction. Defendant was convicted of second degree assault *with a dangerous weapon*. Thus, at a minimum, he had to intend to possess the dangerous weapon. Further, he had to assault someone, either through intentionally causing fear or actually harming them, while in control of a dangerous weapon.

Defendant also notes that a second degree assault conviction does not require harm and, to the extent a victim is harmed, Minnesota does not require that the dangerous weapon be used to inflict the harm. (CIV Dkt. 1, p. 18). This is because the aggravated assault statute has two subdivisions. Both require an assault with a dangerous weapon. Subdivision one does not require proof of actual harm and subdivision two requires "substantial bodily harm." Minn. Stat. § 209.222.

To the extent a victim is harmed under subdivision two, it is not necessary to prove that the harm suffered was actually caused by the dangerous weapon. *State v. Harlin*, 771 N.W.2d 46, 50 (Minn. Ct. App. 2006) ("we hold that Minn. Stat. § 209.222, subd. 2, does not require that the dangerous weapon be used to inflict the substantial bodily harm."). It is sufficient that a dangerous weapon was involved in an assault and the victim was injured.

However, it is undisputed that Defendant was convicted under subdivision one of the statute. (CIV Dkt. 1, p. 18). Thus, there is no need to prove harm of any kind. The only proof required is an assault with a deadly weapon.

Whether the assault was accomplished under the assault-fear or assault-harm component of the Minnesota definition of assault, the Court finds Defendant's aggravated assault conviction from Minnesota is an intentional crime of violence within the meaning of the ACCA. Under Minnesota law, assault-fear requires intent and while assault-harm may not require intent on its own, it does when a deadly weapon is involved. Further, under federal law, "even the 'least touching' with a deadly weapon or instrument . . . is violent in nature and demonstrates at a minimum the threatened use of actual force." *United States v. Grajeda*, 581 F.3d 1186, 1192 (9th Cir. 2009).

### 3. Mr. Ward's Aggravated Assault (with Use of a Firearm or Deadly Weapon) Conviction from Idaho is a Violent Felony.

In 2007 Mr. Ward was convicted of aggravated assault with use of a firearm or deadly weapon in violation of Idaho Code §§ 18-901(b), 905(a) and 19-2520. As described below, this conviction constitutes a third crime of violence within the meaning of the ACCA.

Idaho Code § 18-901 defines assault in two, alternative ways. First, Section 18-901(a) defines assault as "[a]n unlawful attempt, coupled with apparent ability, to commit violent injury on another." I.C. § 18-901(a). Second, Section 18-901(b) defines assault as: [a]n intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." I.C. § 18-901(b).

Idaho Code § 18-905 defines aggravated assault in three, alternative ways. All require an assault accomplished either: (1) with a deadly weapon; (2) by means of force likely to produce great bodily harm; or (3) [w]ith any vitriol, corrosive acid, or a caustic chemical of any kind. I.C. §§ 18-905.

There is no dispute that Mr. Ward was convicted of aggravated assault with a deadly weapon. Defendant argues that aggravated assault with use of a firearm or deadly weapon does not constitute a violent felony because it can be committed without the intentional use of force. (CIV Dkt. 1, p. 21).

Defendant's argument focuses exclusively upon Idaho Code § 18-901(a) (the "attempt prong") of the assault statute. *Id.* at 21-22. Defendant argues that at the time of his

conviction, Idaho Supreme Court precedent, *State v. Patterson*, 88 P.2d 493 (Idaho 1939), aggravated assault could be committed through conduct that requires mere criminal negligence. *Id.*

Assuming *arguendo* that a conviction for aggravated assault with a deadly weapon under Idaho Code § 18-901(a) could be accomplished without the requisite intent, Defendant's argument is unpersuasive. The Court finds Idaho's assault statute is divisible and, applying a modified categorical approach, it is clear that Defendant was convicted under Idaho Code § 18-901(b), the assault-threat component of the statute. (Dkt. 64-1). It is undisputed that such an assaultive act requires "an intent to make a threat and create apprehension in the victim." *State v. Dudley*, 55 P.3d 881 (2002).

Where, as here, a single statute lists multiple, alternative elements constituting, in effect, two distinct crimes, the statute is deemed "divisible" and the Court applies a modified categorical approach. *See Mathis v. U.S.*, 136 S. Ct. 2243, 2249 (2016). "Under that approach, a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted." *Id.* The point of the exercise is for the sentencing court to determine "which of the alternative elements listed . . . was integral to the defendant's conviction." *Id.*

Defendant argues that Idaho Code § 18-901 is not divisible, because the two subsections of the statute constitute alternate means by which the crime of assault may be committed, not essential elements upon which a jury must agree. (CIV Dkt. 1, p. 27). However, it is undisputed that the two means of accomplishing assault in Idaho require

different *mens rea*. Furthermore, I.C. § 18-901(a) requires proof of an unlawful attempt to commit violent injury to another person while I.C. § 18-901(b) requires an intentional threat to cause another bodily harm and an act that creates a fear that such harm is imminent. Thus, the elements of proving assault via I.C. § 18-901(a) and § 18-901(b) are different. *See State v. McDougall*, 749 P.2d 1025, 1028 (Idaho Ct. App. 1988) (referring to I.C. § 18-901(a) and § 18-901(b) as different "form[s] of the crime"); *State v. Dudley*, 55 P.3d at 890-91 (Idaho Ct. App. 2002) (distinguishing between *mens rea* required by assaults pursuant to I.C. § 18-901(a) and § 18-901(b)).

Because the Idaho assault statute is divisible, the Court may conduct a modified-categorical inquiry. In this case, the Idaho judgment makes clear that Mr. Ward was convicted under Idaho Code Section 18-901(b). (Dkt. 64-1). This conviction requires proof of intent and the use, attempted use, or threatened use of violent physical force against the person of another. Thus, Defendant's Idaho conviction for aggravated assault-deadly weapon constitutes a violent felony within the meaning of the ACCA.

In sum, the Court has examined the legal, as opposed to factual, basis of Mr. Ward's three prior felony convictions and finds that each constitutes a violent felony within the meaning of the ACCA as a matter of law. This finding is consistent with both *Johnson I* and *Johnson II*.

## EVIDENTIARY HEARING

An evidentiary hearing is unnecessary. A petitioner is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255(b).

Here, the issues before the Court are purely legal. The Court determined, as a matter of law, that the underlying convictions constitute crimes of violence without regard to how Mr. Ward might have actually committed the crimes. In short, there are no facts in dispute and, having resolved the legal issues, the Court finds that Mr. Ward is not entitled to relief. Therefore, no evidentiary hearing is required.

**ORDER**

**IT IS ORDERED** that Petitioner's Motion to Vacate or Set Aside Sentence (CIV Dkt. 1, CR Dkt. 85) is **DENIED**.

DATED: May 18, 2017

Edward J. Lodge
United States District Judge